Slip Op. 04-14

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | : | |
| SKF USA INC., SKF FRANCE S.A., and SARMA | : | |
| Plaintiffs, | : | |
| | : | Before: WALLACH, Judge |
| v. | : | Court No.: 03-00490 |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| and | : | |
| | : | |
| THE TIMKEN COMPANY, | : | |
| | : | |
| Defendant-Intervenors. | : | |
| | : | |
| | : | |

[Plaintiffs' Partial Consent Motion for Preliminary Injunction is granted.]

Dated: February 18, 2004

Steptoe & Johnson, LLP, (Herbert Carl Shelley) for Plaintiffs SKF USA Inc., SKF France S.A., and SARMA.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne Davidson, Deputy Director; Ada E. Bosque, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; and Barbara Tsai, Attorney, Office of Chief Counsel for Import Administration, of Counsel, for Defendant United States.

Stewart and Stewart, (Terence Patrick Stewart) for Defendant-Intervenors.

1

## OPINION

**WALLACH, Judge:**

### I
### Introduction

On January 22, 2004, the court heard oral argument on Plaintiffs, SKF USA Inc., SKF France S.A., and SARMA (collectively "SKF"), Partial Consent Motion for Preliminary Injunction ("Motion") to enjoin the liquidation of certain ball bearings ("BBs") from France covered by the United States Department of Commerce's ("Commerce") administrative review of antidumping duty orders on BBs. Ball Bearings and Parts Thereof From France, Germany, Italy, Japan, and Singapore: Final Results of Antidumping Duty Administrative Reviews, Rescission of Administrative Review in Part, and Determination Not To Revoke Order in Part, 68 Fed. Reg. 35,623 (June 16, 2003) ("administrative review"). Plaintiffs timely filed their Motion and Defendant-Intervenor, Timken, consented to the Motion.[1] Defendant claimed that it did not have an adequate opportunity to review the proposed order of injunction.[2] During a telephonic status conference held with all the parties on September 18, 2003, the court asked the parties to confer. Defendant subsequently agreed to all but one aspect of the order for injunction: specifically, it did not agree to the injunction remaining in effect through any potential appeals of this court's determination.

---

[1] Pursuant to USCIT R. 56.2, Judgment upon an Agency Record for an Action Described in 28 U.S.C. § 1581(c) "[a]ny motion for a preliminary injunction to enjoin the liquidation of entries that are the subject of the action shall be filed by a party to the action within 30 days after the date of service of the complaint, or at such later time, for good cause shown."

[2] Pursuant to USCIT Rule 7, "[b]efore . . . a motion for a preliminary injunction to enjoin the liquidation of entries . . . is made, the moving party shall consult with all other parties to the action to attempt to reach agreement, in good faith, on the issues involved in the motion."

A preliminary injunction issued by this court continues after issuance of a judgment at least through the period of the automatic stay provided pursuant to USCIT R. 62 and throughout any appeals. The court retains the power to modify or exert jurisdiction over the injunction until a final and conclusive decision is rendered. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (2000). For those reasons, the court will grant Plaintiffs' Motion and enjoin liquidation until the injunction expires as a matter of law or until it orders otherwise.

## II
## Background

Pursuant to USCIT 56.2, Plaintiffs challenge certain aspects of the administrative review of the antidumping duty orders covering BBs. The entries at issue are BBs and parts thereof from France, which were produced, or exported to or imported into the United States, by SKF during the period of review ("POR") from May 1, 2001, through April 30, 2002.[3] Plaintiffs filed their Motion requesting that the court enter an order enjoining the United States, during the pendency of this action, from liquidating all the entries: those entered, or withdrawn from warehouse, for consumption during the POR; those produced by SKF France S.A. or Sarma,

---

[3] The products covered by the antidumping order constitute the following class or kind of merchandise and are classifiable under, among other provisions, Harmonized Tariff Schedules (HTSUS) headings or subheadings:

Ball bearings, Mounted or Unmounted, and Parts Thereof: 3926.90.45, 4016.93.00, 4016.93.10, 4016.93.50, 6909.19.5010, 8431.20.00, 8431.39.0010, 8482.10.10, 8482.10.50, 8482.80.00, 8482.91.00, 8482.99.05, 8482.99.35, 8482.99.2580, 8482.99.6595, 8483.20.40, 8483.20.80, 8483.50.8040, 8483.50.90, 8483.90.20, 8483.90.30, 8483.90.70, 8708.50.50, 8708.60.50, 8708.60.80, 8708.70.6060, 8708.70.8050, 8708.93.30, 8708.93.5000, 8708.93.6000, 8708.93.75, 8708.99.06, 8708.99.31, 8708.99.4960, 8708.99.50, 8708.99.5800, 8708.99.8080, 8803.10.00, 8803.20.00, 8803.30.00, 8803.90.30, and 8803.90.90.

Administrative Review, 68 Fed. Reg. 35,623.

exported to or imported into the United States by SKF; or those exported to or imported into the United States with the knowledge and authorization of SKF.[4]

### III
### Arguments

Plaintiffs claim that absent an injunction preventing liquidation, Commerce will instruct the U.S. Bureau of Customs and Border Protection ("Customs") to liquidate their entries and deprive this court of a basis for judicial review of the challenged determination. Moreover, Plaintiffs contend that injunctions granted by this court during a challenge to an antidumping review should continue in effect until the party exhausts its appeals, and a final and conclusive decision is rendered. Conversely, Defendant claims that a preliminary injunction, as a matter of law, dissolves upon issuance of a final judgment by this court.

### IV
### Applicable Legal Standards

A preliminary injunction is considered an extraordinary remedy. See Ugine-Savoie Imphy v. United States, 24 CIT 1246, 1249 (2000). Pursuant to 19 U.S.C. § 1516a(c)(2) (1999), the United States Court of International Trade is authorized to "enjoin the liquidation of some or all entries of merchandise covered by a determination . . . upon a request by an interested party for such relief."[5] The purpose of a preliminary injunction is to preserve the relative positions of

---

[4] "An injunction against liquidation is not sought for those entries of merchandise covered by the determination which were produced by SKF France S.A. or Sarma but which were exported and/or imported without the knowledge or authorization of SKF." Plaintiff's Motion at 1 n.1.

[5] Section 1516a(e), regarding liquidation in accordance with final decision, states that:

> If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade. . .

4

the parties pending adjudication by the court. See Fundicao Tupy S.A. v. United States, 841 F.2d 1101, 1103 (Fed. Cir. 1988); see also Univ. of Texas v. Camensich, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175, 180 (1981). Before this court will grant a preliminary injunction, the Plaintiffs must establish that: (1) without the preliminary injunction, they will suffer irreparable harm; (2) the balance of hardships weighs in their favor; (3) it is likely that they will succeed on the merits of their case; and (4) granting the preliminary injunction will not run counter to the public's interest. See NMB Singapore Ltd. v. United States, 24 CIT 1239, 1242 (2000).

## V
### Discussion

Commerce issues antidumping duty orders for imported merchandise, sold in the United States below fair value, that materially injures or threatens to injure a domestic industry. See 19 U.S.C. § 1673 (2000). Importers entering merchandise covered by an antidumping order must make a deposit of estimated duties at the time the merchandise is entered. See 19 U.S.C. § 1673e(a)(3). The actual liquidation of entries subject to an antidumping order by Customs may

---

(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and

(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

5

occur years after importation. See Consol. Bearings Co. v. United States, 348 F.3d 997, 1000 (Fed. Cir. 2003). Before liquidation occurs, however, an interested party may request administrative review of the antidumping duty order. Id. Pursuant to section 1675(a)(2)(C), the results of an administrative review determination become the basis for the assessment of antidumping duties on entries of merchandise covered by that determination. Shinyei Corp. of Am. v. United States, 2004 U.S. App. LEXIS 783, 20-21 (Fed. Cir. 2004). Section 516A of the Tariff Act of 1930 provides for judicial review of Commerce's antidumping duty determinations. Id. at 23; 19 U.S.C. § 1516a(a)(2000).

Pursuant to § 1516a(c)(1), unless liquidation is enjoined by the court, entries of merchandise covered by Commerce's determination are liquidated in accordance with that determination or a conclusive decision by either this court or an appeals court. However, this court may grant injunctive relief barring liquidation upon request by an interested party for such relief and a proper showing that a preliminary injunction should be granted.[6] 19 U.S.C. §1516a(c)(2). This court grants preliminary injunctions in antidumping cases when it is essential for the protection of a party's property rights against injuries otherwise irremediable.[7] See Cavanaugh v. Looney, 248 U.S. 453, 456, 39 S. Ct. 142, 143, 63 L. Ed. 354, 358 (1919). Liquidation of a party's entries is the final computation or ascertainment of duties accruing on those entries. See Juice Farms v. United States, 68 F.3d 1344, 1345 (Fed. Cir. 1995) (citing 19

---

[6] The Court of International Trade possesses "all the powers in law and *equity* of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (2000) (emphasis added).

[7] An injunction is "framed according to the circumstances of the case" and acts as a "remedial writ which courts issue for the purpose of enforcing their equity jurisdiction." Black's Law Dictionary (7th ed. 1999) (internal citations omitted).

C.F.R. § 159.1). Once liquidation occurs, it permanently deprives a party of the opportunity to contest Commerce's results for the administrative review by rendering the party's cause of action moot. See Zenith Radio Corp. v. United States, 710 F.2d 806, 809-10 (Fed. Cir. 1983).

**A**
**Plaintiffs Have Established Their Right to Preliminary Injunctive Relief**

All of the parties consented to a preliminary injunction, and no party denies that Plaintiffs have established their right to a preliminary injunction. Defendant, however, disputes the length of the injunction and states that "as a matter of law, trial court injunctions dissolve upon issuance of its final judgment." Defendant's Response to SKF's Partial Consent Motion for Preliminary Injunction ("Defendant's Response") at 2. Plaintiffs have certainly established their right to some sort of preliminary injunction.

**1**
**Plaintiffs Will Suffer Irreparable Harm Absent the Requested Injunctive Relief**

Plaintiffs request a preliminary injunction because they claim that they will suffer irreparable injury if their entries are liquidated because liquidation will frustrate their right to judicial review. A preliminary injunction grants equitable relief and requires a party to do or refrain from doing a particular thing. See Black's Law Dictionary (7th ed. 1999). After an antidumping review determination, if a party's entries are liquidated prior to judicial review of the determination and antidumping duties are assessed, any outstanding challenges as to those entries are rendered moot because liquidation, absent errors by Commerce or Customs, places the entries outside the jurisdiction of the court.[8] See Chr. Bjelland Seafoods A/S v. United States, 19

---

[8] Errors in either liquidation instructions by Commerce or in the actual liquidation of the entries by Customs do not deprive the court of subject matter jurisdiction. See Consol. Bearings,

CIT 35, 51 (1995).

In Zenith, 710 F.2d at 806, a party filed an action challenging Commerce's antidumping

review determination. It sought a preliminary injunction against liquidation of its entries, which

this court denied. The Federal Circuit held that once liquidation occurs, a subsequent decision by

the Court of International Trade has no effect on the dumping duties assessed on the parties'

entries.[9] Id. at 810. The Federal Circuit found that "the statutory scheme has no provision

permitting reliquidation in this case or imposition of higher dumping duties after liquidation" if

and when a party "is successful on the merits."[10] Id. Therefore, the Federal Circuit found if the

court did not enjoin liquidation, the plaintiffs might be assessed antidumping duties regardless of

348 F.3d at 1002 (stating that an action challenging Commerce's liquidation instructions is a challenge to the 'administration and enforcement' of Commerce's final results and the Court of International Trade may review the instructions pursuant to 28 U.S.C 1581(i)(4)); see also Xerox Corp. v. United States, 289 F.3d 792, 795 (Fed. Cir. 2002) (explaining that in cases where the scope of an antidumping duty order is unambiguous and undisputed, the misapplication of the antidumping order by Customs may be protested pursuant to 19 U.S.C. § 1514(a)(2) and the Court of International Trade may review any denials of such protests pursuant to 28 U.S.C. § 1581(a)).

[9] The court based its decision on sections 516A(e) and 516A(c)(1) of the Tariff Act of 1930. Absent a preliminary injunction, entries for the review period are liquidated immediately in accordance with the Trade Agreements Act of 1979, and dumping duties assessed at the margin set by the review. Zenith, 710 F.2d at 810.

[10] Moreover, the Federal Circuit stated that

Congress deliberately gave interested parties the right to obtain effective judicial review of section 751 review determinations to aid effective enforcement of antidumping laws. A conclusion that no irreparable harm is shown when that judicial review is rendered ineffective by depriving the interested party of the only meaningful correction for the alleged errors, would be inconsistent with the actions taken by Congress to correct deficiencies in prior enforcement activity under the antidumping laws.

Zenith, 710 F.2d at 811.

the court's final judgment as to results of the administrative review.  Id.

In this case, liquidation would permanently deprive Plaintiffs SKF of the opportunity to contest Commerce's results for the administrative review by rendering Plaintiffs' cause of action moot.  The inability of the reviewing court to "meaningfully correct the review determination" constitutes irreparable injury. Id. at 811.  Accordingly, Plaintiffs have met the first requirement, that they will suffer irreparable injury absent the requested relief.

**2**
**The Balance of Hardships Favors SKF**

Plaintiffs claim that the Government will suffer no hardship as a result of the court's grant of an injunction. As part of its analysis of the balance of hardships, the court must also determine whether the opposing party would suffer adversely should the court grant the preliminary injunction.  See Zenith, 710 F.2d at 809.

In this instance, the court weighs the relative hardships of the parties if the injunction is granted and finds that the balance favors the Plaintiffs.  Suspension of liquidation at most inconveniences the Government. See OKI Elec. Indus. Co. v. United States, 11 CIT 624, 632-33 (1987); see also Timken Co. v. United States, 6 CIT 76, 81 (1983).  The Government will, in fact, ultimately collect or refund, with interest, any amounts owed from or due to the plaintiffs at the conclusion of this litigation.  See Ugine-Savoie Imphy v. United States, 24 CIT at 1250-51 (2000).  Similarly, the Defendant-Intervenors will only be inconvenienced by the delay.  Should the court, however, fail to issue a preliminary injunction, Plaintiffs' entries could be liquidated, thus, permanently depriving them of both a potential refund and the ability to contest Commerce's final results.  Because the hardship to the Plaintiffs upon liquidation outweighs the

9

inconvenience of delay to the Government and the Defendant-Intervenors, Plaintiffs have met the second requirement of their burden.

**3**
**There is Some Likelihood of Success by SKF on the Merits of the Action**

Plaintiff also claims that it has made a minimal showing of the likelihood of its success on the merits. Significant questions of law constitute "fair ground for litigation." Ceramica Regiomontana, S.A. v. United States, 7 CIT 390, 397 (1984). The greater the potential harm to the plaintiff, the lesser the burden on Plaintiffs to make the required showing of likelihood of success on the merits. See Am. Air Parcel Forwarding Co. v. United States, 1 CIT 293, 299 (1981). Because Plaintiffs have shown that "in the absence of a preliminary injunction, they would suffer irreparable harm, they are required only to raise 'serious, substantial, difficult and doubtful' questions to satisfy their burden of proving a likelihood of success on the merits." Ugine, 24 CIT at 1251.

Plaintiff makes several claims regarding Commerce's cost calculations for the challenged determination in its Complaint. Plaintiffs allege "that Commerce erred in its calculation of normal value by failing to calculate constructed value profit in accordance with 19 U.S.C. § 1677b(e)(2)(B), and by excluding data for certain below-cost sales in its calculations." Plaintiffs Motion at 6; Complaint at 3-4. Plaintiffs' Complaint also alleges that Commerce erred in its application and selection of "facts otherwise available," which was not in accordance with law. Complaint at 4.

**4**
**The Public Interest is Best Served by Granting the Requested Relief**

Finally, Plaintiff claims that the public interest is best served by ensuring that accurate

amounts of antidumping duties are assessed. Certainly, the public interest is best served by preventing entries subject to antidumping duties from escaping the correct amount of such duties. See Bomont Indus. v. United States, 10 CIT 431, 434 (1986).  Accordingly, the public interest may be best maintained by "the procedural safeguard of an injunction pendente lite to maintain the status quo of the unliquidated entries until a final resolution of the merits." Smith-Corona Group v. United States, 1 CIT 89, 98 (1980).  "As for the public interest, there can be no doubt that it is best served by ensuring that the [Department] complies with the law, and interprets and applies our international trade statutes uniformly and fairly." Ceramica, 7 CIT at 397.  Here, granting Plaintiffs motion for preliminary injunction will ensure judicial review of  Commerce's determination and will further the public interest of an accurate assessment of antidumping duties.

Therefore, the court, having applied the traditional four-part test for issuing a preliminary injunction concludes that Plaintiffs have demonstrated that they will suffer irreparable harm if their entries are liquidated prior to a conclusive court decision; that the balance of hardships favors the grant of a preliminary injunction; that they have "a likelihood of success on the merits"; and finally, that the public interest is best served by enjoining liquidation. This, however, resolves only whether Plaintiffs are entitled to an injunction.  The court now turns to the issue regarding the duration of the injunction.

**B**
**Scope and Duration of Preliminary Injunctions Issued by the Court**

**1**
**A Preliminary Injunction Survives From Issuance of the Order of Injunction through a Conclusive Court Decision**

Defendant claims that, pursuant to the Federal Circuit's decision in Fundicao, 841 F.2d 1101 (Fed. Cir. 1988), "a preliminary injunction issued by a trial court dissolves upon entry of a final court decision." Defendant's Response at 3. Defendant argues that "if . . . the court sustains the agency's determination as valid, the injunction dissolves and there is <u>no</u> <u>basis</u> for the agency administratively to suspend liquidation, as the presumption of validity has survived judicial review." <u>Id.</u> at 6 (emphasis in original). Plaintiffs contend that a preliminary injunction issued by this court continues from issuance throughout an appeal. Plaintiffs' Reply to Defendant's Response to SKF's Partial Consent Motion for Preliminary Injunction ("Plaintiffs' Reply") at 3.

Defendant's reliance on <u>Fundicao</u> to bolster its argument mistakes the Federal Circuit's holding. A decision, that is appealed from this court, is not a "final court decision" for purposes of liquidation. <u>Timken Co. v. United States</u>, 893 F.2d 337, 339-40 (Fed. Cir. 1990). <u>Fundicao</u> stands for the proposition that when the appeals court has an interlocutory appeal regarding a preliminary injunction before it, that appeal becomes moot if this court rules on the merits of the case prior to the Federal Circuit's ruling on the interlocutory appeal, or if the underlying need for the preliminary injunction disappears.

In <u>Fundicao</u>, the appellant sought review of an order by this court that denied its motion for a preliminary injunction to prevent the Government from liquidating its entries pending the

12

lower court's decision on the merits of its challenge to the underlying antidumping duty order. Before the Federal Circuit could rule on the preliminary injunction, this court entered a final judgment affirming the final determinations by Commerce and dismissing the appellant's complaint. Fundicao, 841 F.2d at 1103. The Federal Circuit stated that "although a preliminary injunction is usually not subject to a fixed time limitation, it 'is *ipso facto* dissolved by a dismissal of the complaint or the entry of a final decree in the cause.'" Id. (internal citations omitted).

Moreover, this court's jurisdiction over the injunction in Fundicao was limited because:

> The filing of a timely and sufficient notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any *matters* involved in the appeal. It divests the district court of authority to proceed further with respect to such *matters*, except in aid of the appeal [e.g., granting a stay to preserve the *status quo* pending the appeal, Fed. R. Civ. P. 62; Fed. R. App. P. 8], or to correct clerical mistakes under Rule 60(a) of the Federal Rules of Civil Procedure . . ., or in aid of execution of a judgment that has not been superseded, until the district court receives the mandate of the court of appeals.

Id. (emphasis added). The court's statement regarding the matter appealed, that an appeal "has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any *matters* involved in the appeal," is limiting language.[11]

_____

[11] Thus, in Fundicao, the Federal Circuit's review of the grant or denial of a preliminary injunction was the *matter* before the court, not the lower court's decision regarding the merits of Commerce's antidumping review. 841 F.2d at 1103. For example, if a party seeks an interlocutory appeal regarding the denial of a preliminary injunction, the jurisdiction of the appellate court does not extend over a motion for directed verdict made during the ongoing trial, but rather the appellate court has jurisdiction solely over the interlocutory appeal. See e.g., Univ. of Texas, 451 U.S. at 396 (explaining that when a district court grants a preliminary injunction, the parties generally have not had the opportunity to present their cases nor receive a final decision on the merits. "Thus when the injunctive aspects of a case become moot on appeal of a

13

Defendant's argument also overlooks the Federal Circuit's acknowledgment in Fundicao

that preliminary injunctions are usually not subject to a fixed time limitation. Nothing in the

Federal Circuit's opinion suggests that it intended Fundicao to stand for the proposition that all

preliminary injunctions issued by this court dissolve upon its issuance of a judgment, before the

time to appeal has run. Furthermore, the Federal Circuit's decision in Timken, makes clear that

"an appealed CIT decision is not a 'final court decision' within the plain meaning of § 1516a(e)."

[12] 893 F.2d at 339.

Defendant next claims that

> [i]f this Court has sustained the agency's determination, appellants may seek an
> injunction pending appeal to continue the injunction of liquidation. . . . Pursuant
> to Rule 62(d), SKF may move to stay judgment. Similarly, FRAP 8 provides a
> mechanism for parties to obtain stays or injunctions pending appeal. SKF's
> contention that preliminary injunctions encompass appellate proceedings renders
> Rule 62 and FRAP 8 superfluous.

Defendant's Response at 6-7.[13]

---

preliminary injunction, any issue preserved by an injunction bond can generally not be resolved
on appeal, but must be resolved in a trial on the merits."); see also Venezia v. Robinson, 16 F.3d
209, 211 (7th Cir. 1994) (stating that "a preliminary injunction cannot survive the dismissal of a
complaint).

[12] The court found the fact that "the term 'final court decision' [in § 1516a(e)] must be
read together with the words that follow, specifically, 'in the action.' An 'action' does not end
when one court renders a decision, but continues through the appeal process. Thus, an appealed
CIT decision is not the *final* court decision *in the action*." Timken, 893 F.2d at 339. Moreover,
the Federal Circuit found that § 1516a(e) did not "require liquidation in accordance with an
appealed CIT decision, since that section requires that liquidation take place in accordance with
the final court decision in the action." Id. at 339-40.

[13] The Government has in the past argued that "a decision of the CIT is not final for the
purposes of publication of notice until (1) an appeal is decided by this court, or (2) the time for
appeal expires. Timken, 833 F.2d at 338.

FRAP 8, Stay or Injunction Pending Appeal, states that:

> [a] party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of a district court pending appeal; (B) approval of a supersedeas bond; or (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

Id. The FRAP, however, does not include any limiting language that differentiates between preliminary and permanent injunctions. It specifically also provides for modification of an injunction once a district court has rendered its judgment while an appeal is pending. The language in FRAP 8, indicating that a district court may suspend or modify an injunction, is indicative of the fact that an injunction may continue from a lower court's issuance through an appeal. Defendant has not cited authority; nor does anything within the antidumping statutes, this court's rules, the [FRAP], or case law prevent this court from amending or modifying an injunction while a case is appealed on a collateral matter. Furthermore, neither FRAP 8 nor any other FRAP address directly the extinguishment of injunctions issued once a district court has entered its judgment.

In addition to stays pursuant to FRAP 8, court rules provide for a stay of proceedings to enforce a judgment - an automatic stay. USCIT R. 62(a) states that, except as ordered by the court, "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry." USCIT R. 62(a) requires the court to stay the execution of a judgment so that a party has the opportunity to appeal this court's decision.[14] Moreover, "19 U.S.C. § 1516a(e) requires that liquidation, once enjoined, remains

---

[14] Should a losing party appeal, the court does not have discretion to moot the appeal by amending, modifying, or dissolving the injunction so as to permit liquidation of the appellant's entries prior to a conclusive decision by the appeals court. Hosiden Corp. v. United States, 85

15

suspended until there is a '*conclusive* court decision which decides the matter, so that subsequent entries can be liquidated in accordance with that conclusive decision.'" AIMCOR v. United States, 23 CIT 932, 939 (1999) (quoting Timken, 893 F.2d at 342) (emphasis by Federal Circuit).

Defendant misapprehends the mechanics of the antidumping statutes and the court's rules. Pursuant to § 1516a(c)(2), this court may enjoin the liquidation of some or all entries of merchandise covered by the antidumping review upon request by an interested party for such relief and a proper showing by the party that the injunction should be granted under the circumstances.  In antidumping cases, in order to afford preventive relief, the court routinely issues preliminary injunctions, which bar the agency from liquidating entries pending final judgment.[15]  However, in instances where an injunction has not been issued, USCIT R. 62(d) provides that when an appeal is taken, the appellant may obtain a stay.

Defendant argues that preliminary injunctions running until the completion of appellate proceedings would render USCIT R. 62 and FRAP 8 superfluous. This argument ignores the separate courses of action that the antidumping statutes and the court rules afford to parties in order to prevent the Government from liquidating entries. There are four general scenarios that the court routinely faces in the context of its review of the agency's antidumping determination. In the first scenario, the court grants an injunction against the agency, which bars liquidation of a

_____

F.3d 589, 591 (Fed. Cir. 1996).

[15] The plaintiff in Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 F. 4 (1901) instituted a suit in an attempt to regain possession of his property by means of an injunction. The court stated that "[t]he function of an injunction is to afford preventive relief, not to redress alleged wrongs which had been committed already.  An injunction will not be used to take property out of the possession of one party and put it into that of another." Id. at 10. (Internal citations omitted).

party's entries; however, after judicial review the agency's determination is upheld. In the second, an injunction is issued against the agency, and the agency's determination is not upheld. In the third, no injunction is issued by the court against the agency barring liquidation of a party's entries, and the agency's determination is upheld. Finally, in the fourth scenario, no injunction is issued by the court against the agency, and the agency's determination ultimately is not upheld by the court.

In the first two scenarios, in which the court grants an injunction, the injunction continues until there is a conclusive decision in the case. Defendant argues that "[i]f the court determines ultimately that the agency's determination is invalid, the injunction is dissolved but the agency continues to administratively suspend liquidation pursuant to Timken." Defendant's Response at 6.

Suspension of liquidation occurs prior to judicial review of the agency's determination. The statutory scheme provides that if the International Trade Commission ("ITC") finds a reasonable indication of injury to the domestic industry in an antidumping investigation, the United States Department of Commerce's International Trade Administration ("ITA") must then preliminarily determine whether there is a "reasonable basis to believe or suspect that merchandise is being sold, or is likely to be sold, at less than fair value ["LTFV"]." 19 U.S.C. § 1773b(b)(1)(A) (1999). If the ITA's determination is affirmative, all entries of the subject merchandise are ordered suspended. § 1673b(d). A negative preliminary determination does not result in suspension of liquidation. See Am. Lamb Co. v. United States, 785 F.2d 994, 998 (Fed. Cir. 1986).

Once the agency's determination is challenged before this court, administrative

17

suspension is necessary for the agency to conform itself to the court's orders. Nothing within

equity or the antidumping statutes, however, requires this court to subordinate its power to

enjoin. While the court may not issue an injunction contrary to law, it need not forego granting

injunctive relief because the agency has also administratively suspended liquidation.[16] The

power of this court sitting in equity complements Commerce's administrative suspension. The

actions taken by an agency to enforce the court's judgment or orders, such as continued

administrative suspension of liquidation throughout the court's review of the agency's

determination, is separate and distinct from the court's grant or denial of a preliminary

injunction.

Section 1516a(e) entitled "liquidation in accordance with final decision" governs the first

scenario in which the court grants an injunction against the agency, which bars liquidation of a

party's entries; however, after judicial review the agency's determination is upheld. The statute

states that

> [i]f the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit . . . entries, the liquidation of which was enjoined . . . shall be liquidated in accordance with the *final court decision* in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

Section 1516a(e) (emphasis added). While the statute does not explicitly address an appeal, it is

---

[16] The Supreme Court explained in Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946), that equitable jurisdiction is not limited in the absence of a clear and valid legislative command. Unless a statute, in words or by a necessary inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction must be recognized and applied. Id. (citing Brown v. Swann, 35 U.S. 497, 503, 511, 9 L. Ed. 508, 511 (1836)). "'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" Id.

implicit that the losing party has the opportunity to appeal this court's decision, thus the requirement of USCIT R. 62, automatic stay. Moreover, the statute explicitly provides for the dissolution of the injunction, which permits the agency to liquidate entries in accordance with this court's judgment, should the losing party fail to appeal.

Alternately, in accordance with the statute the Government might move to dissolve the injunction. "[A] party moving for dissolution must make a very compelling demonstration, both of changed circumstances and resulting inequities for the moving party, to justify dissolution of the injunction prior to a final decision on the merits of the action." AIMCOR, 23 CIT at 939. After a decision on the merits, the court certainly may revisit the necessity of the injunction upon motion. The court, however, is not persuaded that the Plaintiffs, having met their burden of persuasion initially in order to receive the preliminary injunction, must again convince the court of its necessity in order to appeal the court's judgment. Rather it remains incumbent upon the Defendant to persuade the court that the injunction is unnecessary and should be reconsidered or dissolved.

Defendant also claimed during oral argument that there was a concrete danger to Commerce in having entries deemed liquidated if it followed Plaintiffs' suggestion that an injunction lasted through appeal. Defendant's fear that Commerce would face deemed liquidation if an injunction continued through an appeal is unjustified. "[I]n order for a deemed liquidation to occur, (1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1376 (Fed. Cir. 2002).

19

In Fujitsu, the importer claimed that Customs erroneously liquidated its entries after having received notice that the injunction against liquidation had been removed. 283 F.3d at 1368-70. The statute, 19 U.S.C. § 1504(d) (1999), "governs the deemed liquidation of entries whose liquidation previously was suspended by a court order." Id. at 1376. It provides that, when a suspension of liquidation required by court order is removed, Customs must liquidate the entry within six months after receiving notice of the removal from Commerce, other agency, or a court with jurisdiction over the entry. § 1504(d). Entries not liquidated by Customs within six months after receiving such notice are deemed liquidated at the rate of duty asserted at the time of entry. Id.

In order for a party's entries to be deemed liquidated, a conclusive decision must be rendered so that suspension of liquidation is removed, see Fujitsu, 283 F.3d at 1379, the same moment that any preliminary injunction granted by the lower court dissolves. Because there is no confusion as to whether the injunction ended earlier or later than when suspension of liquidation was removed, Commerce faces no difficulties in ascertaining when it may give a liquidation instruction to Customs.

The second scenario, in which the court grants a preliminary injunction and determines that the agency's actions are invalid, leaves the injunction in force because there has not been an action in favor of the Government. Throughout any subsequent court ordered remands to the agency or appeals, liquidation may not occur until either a final decision in accordance with § 1516a(e) is reached and the time to appeal expires, or an appeals court renders a conclusive decision.

The third and fourth scenarios involve instances when the court does not grant an

20

injunction. Under the third scenario, in which no injunction is issued and the court finds for the Government, the court's rules provide a means for the plaintiff to apply for a stay of this court's judgment pending an appeal. "The mere filing of an appeal does not act to suspend execution or enforcement of a judgment or injunction; a stay must be applied for and granted." 20 Moore's Federal Practice, § 308.02 (3d ed. 2003). Thus, USCIT R. 62(d) permits parties to apply for a stay and protects their right to appeal. Furthermore, the administrative suspension of liquidation is lifted when the time to file an appeal expires. See Fujitsu, 283 F.3d at 1379. Without the grant of a stay, the agency could liquidate the party's entries and render its appeal moot.

Under the fourth scenario, in which the agency is unsuccessful and no injunction is issued, pursuant to § 1516a(c), Commerce must administratively suspend liquidation of the entries in order to conform itself to the court's decision because the time frame for a conclusive decision in the action is uncertain. See Timken, 893 F.2d at 341. If the agency failed to administratively suspend liquidation and subsequently liquidated a party's entries, the agency would be in violation of the court's remand order. An agency, like any litigant, must obey the court's orders. The Government may not choose to disregard court orders at its pleasure. However, the manner in which the agency obeys, so long as it is consistent with the law, is its province.[17]

---

[17] "The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion." Marbury v. Madison, 5 U.S. 137, 170 (1803); see also Morrison v. Olsen, 487 U.S. 654, 694, 108 S. Ct. 2597, 2620-21, 101 L. Ed. 2d 569, 607 (1988) (quoting that "'[w]hile the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.'" Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635, 72 S. Ct. 863, 870, 96 L. Ed. 1153, 1199 (1952) (concurring opinion)).

An injunction issued by this court is effective immediately and continues until there is a final and conclusive decision, which dissolves the preliminary injunction. See Volume Footwear Retailers of Am. v. United States, 10 CIT 12, 14 (1986).  FRAP 8 and USCIT R. 62 both govern instances when this court's decisions are not yet final and conclusive.  If the court does not issue an injunction and rules in favor of the agency, the party may appeal the court's decision; FRAP 8 provides a means by which a party may apply to the court to preserve its rights and prevent liquidation of its entries pending an appeal of the court's judgment.  If the Federal Circuit upholds the decision by this court and the parties do not appeal to the Supreme Court, this court's judgment is final and conclusive, thus, execution on the judgment, and dissolution of the injunction, may occur years later.  "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S. Ct. 631, 633, 89 L. Ed. 911, 916 (1945).  Only after a conclusive decision by either this or a court of appeals must a preliminary injunction be dissolved.

**2**
**This Court Retains Jurisdiction Over a Preliminary Injunction It Has Issued Throughout the Pendency of an Appeal on a Collateral Matter**

Defendant further claims that "once an appeal has been taken, the jurisdiction of the trial court is 'limited,'" and that as a general principle "[t]rial [c]ourts are divested of jurisdiction once they have rendered judgment." Defendant's Response at 3, 9.

The court retains jurisdiction over a preliminary injunction until a conclusive decision is reached and the needs which necessitated the injunction no longer exist. See Timken, 893 F.2d at 342.  Like the district courts, this court retains the power to modify or amend preliminary

22

injunctions it has issued, in view of equity and justice.[18] District courts must retain the power to make orders appropriate to preserve the *status quo* of an injunction while an appeal is pending. See Newton v. Consol. Gas Co., 258 U.S. 165, 177, 42 S. Ct. 264, 267, 66 L. Ed. 538, 548 (1922). This includes the general power and discretion to amend or modify injunctions, should circumstances or the positions of the parties change.[19] System Fed'n No. 91 v. Wright, 364 U.S. 642, 647-48, 81 S. Ct. 368, 371, 5 L. Ed. 2d 349, 353 (1961). The necessary corollary to the court's power to amend or modify is the implicit requirement that the court retain jurisdiction over injunctions it has issued.

Defendant correctly claimed in its brief that filing a notice of appeal from a district court's judgment generally vests jurisdiction in the court of appeals, see Asher v. Harrington, 461 F.2d 890, 895 (7th Cir. 1972), however, an injunction, by its very nature, is prospective. The Defendant's challenge to the jurisdiction of this court over injunctions from the time this court

---

[18] The Supreme Court stated in United States v. Swift & Co., 286 U.S. 106, 114-15, 52 S. Ct. 460, 462, 76 L. Ed. 999, 1005-06 (1932), that

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions . . . . Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. . . . [A] court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.

Id. (internal citations omitted); See Lapin v. Shulton, Inc., 333 F.2d 169, 170 (9th Cir. 1964).

[19] However, the party that moves for an amendment or modification of an injunction bears the burden of showing the alleged changed circumstances, either legal or factual, which make the injunction inequitable. AIMCOR, 23 CIT at 939.

23

renders a judgment through a conclusive decision by an appeals court must fail if the court is to

retain its power to preserve the *status quo*.

**3**
**The Government's Argument That Success Before This Court Rebuts the Presumption of Validity of the Preliminary Injunction and Requires Plaintiffs to Make A Motion for A Subsequent Preliminary Injunction Pending Appeal Would Place An Inequitable Procedural Burden on the Parties that Is Not Statutorily Required**

The Government additionally argues that, after a decision sustaining Commerce's

determination, the court must consider anew whether injunctive relief pending appeal is

appropriate. Defendant claims that the presumption of the validity of the preliminary injunction

and its necessity are rebutted by its success before the court.

While the court certainly has authority to reconsider any order properly before it pursuant

to USCIT R. 60(b),[20] the Government cited no credible authority for the proposition that a final

---

[20] USCIT R. 60(b) provides that

> On motion of a party or upon its own initiative and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

> (1)    mistake, inadvertence, surprise, or excusable neglect;
> (2)    newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing under Rule 59(b);
> (3)    fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4)    the judgment is void;
> (5)    the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6)    any other reason justifying relief from the operation of the judgment.

> The motion shall be made within a reasonable time, and for reasons (1),

24

decision dissolves an injunction. See Timken, 893 F.2d at 341. Moreover, seeking a second injunction would impose an unnecessary procedural requirement on Plaintiffs. If Defendant's argument was correct, then, in addition to that unnecessary procedural burden, Plaintiffs might be denied the right to appeal because liquidation of its entries would moot that possibility. Moreover, should the court find that a party has fulfilled the initial requirements for a grant of a preliminary injunction, then those initial findings as well as all subsequent findings by the court are subject to appellate review.

**4**

**The Irreparable Harm to Plaintiff Should a Preliminary Injunction Fail to Continue Pending Conclusive Resolution by the Court Weighs in Favor of the Injunction**

For nearly two decades, since Zenith, parties have sought, Commerce has consented to, and this court has issued, a single injunction when it has reviewed an antidumping investigation or administrative review. That injunction has remained in effect throughout the case and any subsequent appeal. The statutory scheme does not provide for either reliquidation or imposition of higher duties should a party later be successful on the merits. See PPG Indus. v. United States, 11 CIT 5, 7 (1987) (citing Zenith, 710 F.2d at 810-12. Once liquidation occurs, judicial review is ineffective and thus, "[a]llowing the liquidation to proceed would be tantamount to denial of the

---

> (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.
>
> This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28 U.S.C. § 1655, or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

opportunity to challenge administrative determinations." Id.

Liquidation of the entries would deprive Plaintiffs the opportunity for meaningful judicial review. The Government has failed to show what harm it has suffered from the court's equitable practice in the past or make a reasonable argument as to what harm it will suffer in the future absent the court's consent to instituting a duplicative procedural requirement. During oral argument, Plaintiffs suggested that Commerce's new stance regarding preliminary injunctions was the result of this court's recent decision in the crawfish case, Yancheng Baolong Biochemical Prods. Co. v. United States, 277 F. Supp. 2d 1349 (CIT 2003).[21] Plaintiffs may be correct, given the timing of the Government's changes in posture regarding the duration of preliminary injunctions.

Ultimately, the interests of judicial economy weigh against requiring the issuance of a second injunction predicated on the same grounds as the first, a challenge to Commerce's review determination. No meritorious reason has been put forth by the Government for judicial creation

---

[21] In Yancheng, Commerce ordered Customs to liquidate a party's entries, and almost all of the entries were liquidated. The court determined that this violated the court's previous order granting a preliminary injunction suspending liquidation. The Government argued that a final decision, in harmony with the Commerce's original determination, terminated the injunction and, absent a new injunction pending appeal, the Government lawfully liquidated the entries. Yancheng, 277 F. Supp. 2d at 1352-56. The court held that the injunction remained in effect pending the appeal, and thus, the Government's liquidation of the entries constituted contempt of the court's order. Id. at 1365.

Additionally, in AK Steel Corp. v. United States, 281 F. Supp. 2d 1318 (CIT 2003), after an injunction was served on the Government, Customs liquidated a number of entries in violation of the injunction and continued to do so for a number of months. The court held an emergency conference, at which time few entries whose liquidation had not become final remained. The court held that because the liquidation occurred through an illegal act of Customs, the doctrine of finality did not attach to the illegal liquidations and the matter was ordered returned to the *status quo*. Id. at 1323. The court declared the illegal liquidations null and void *ab initio*. AK Steel Corp., 281 F. Supp. 2d at 1323.

26

of an additional, procedural burden. To preserve the *status quo*, the preliminary injunction issued by this court will continue as long as it is necessary to preserve the parties rights.

**VI**
**Conclusion**

The court, having applied the traditional four-part test for issuing a preliminary injunction concludes that: (1) that Plaintiffs will suffer irreparable harm if their entries are liquidated prior to a conclusive court decision; (2) that the balance of hardships favors granting the preliminary injunction because Commerce and Defendant-intervenors will suffer inconvenience while Plaintiffs would be deprived of their right to judicial review; (3) Plaintiffs have demonstrated "a likelihood of success on the merits" because they have raised serious and substantial questions regarding Commerce's determination including its cost calculations; and finally, (4) the public interest is best served by enjoining liquidation to ensure that accurate antidumping duties are assessed. Plaintiffs' Motion is granted and the preliminary injunction shall run until a final and conclusive decision is rendered in this case.

    /s/ Evan. J. Wallach    
Judge

Dated: February 18, 2004
    New York, New York