Slip Op. 03 - 116

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| AK STEEL CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| UNITED STATES, | : | Court No. 03-00102 |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| THYSSENKRUPP NIROSTA GmbH and | : | |
| THYSSENKRUPP VDM GmbH, | : | |
| | : | |
| Defendant-Intervenors. | : | |
| | : | |

[Following an emergency status conference on the allegedly inadvertent liquidation in violation of an injunction order over entries covered by a challenged antidumping duty review determination, the Court declares such liquidations void *ab initio*.]

Dated: September 3, 2003

*Collier Shannon Scott, PLLC*, Washington D.C. (*Jeffrey S. Beckington*, *Adam Gordon*), for the plaintiffs.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, Civil Division, Commercial Litigation Branch, United States Department of Justice (*Cristina C. Ashworth*); Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Elizabeth Doyle*, *Bernice Brown*), of counsel; Office of Assistant Chief Counsel, International Trade Litigation, U.S. Bureau of Customs and Border Protection (*Ellen Daly*), of counsel, for the defendant.

*Hogan & Hartson L.L.P.* (*Craig Lewis*), Washington, D.C., for the defendant-intervenors.

**OPINION AND ORDER**

On March 12, 2003, Plaintiff AK Steel Corporation mailed a summons to the Attorney General of the United States and the U.S. Department of Commerce notifying them that pursuant to 28 U.S.C. § 1581(c) an action was commenced to contest *Stainless Steel Sheet and Strip in Coils From Germany: Notice of Final Results of Antidumping Duty Administrative Review*, 68 Fed. Reg. 6716 (Feb. 10, 2003), an administrative review of the antidumping duty order on such product for the period from July 1, 2000 through June 30, 2001. The summons was timely filed within 30 days of publication in the *Federal Register* as required by 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 28 U.S.C. § 2636. On April 7, 2003, the plaintiff filed its complaint contesting aspects of the determination as unsupported by substantial evidence on the record or otherwise not in accordance with law, and on April 8 submitted to the Court a Consent Motion for Preliminary Injunction to Enjoin Liquidation of Certain Entries along with a proposed order.

In order to preserve the *status quo*, this Court is authorized to grant injunctive relief suspending liquidation of entries pending the outcome of litigation on the merits of an action contesting the final results in an antidumping duty administrative review. *See* under 19 U.S.C. § 1516a(c). After due consideration of the four factors of irreparable harm, likelihood of success on the merits, public interest, and balance of hardships,[1] the Court (Aquilino, J.) deemed the plaintiff's proposed Order of Injunction acceptable and signed it on April 15, 2003. On or about April 16, 2003, the Clerk of the Court effected service of the Order of Injunction upon the United States Department of Commerce, International Trade Administration ("Commerce"), the United States

---

[1] *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

Bureau of Customs and Border Protection (as the former United States Customs Service)

("Customs"), and the United States Department of Justice, by depositing certified copies in the U.S.

mails. On or about April 18, 2003, the plaintiff personally served[2] copies of the Order of Injunction

upon the persons and entities named in the Order of Injunction, which reads as follows:

> Upon consideration of *Plaintiff's Consent Motion for Preliminary Injunction to Enjoin Liquidation of Certain Entries* filed by Plaintiff, AK Steel Corporation (Plaintiff), and pursuant to Section 516A(c)(2) of the Tariff Act of 1930m as amended, 19 U.S.C. § 1516a(c)(2), it is hereby
>
> **ORDERED** that *Plaintiff's Consent Motion for Preliminary Injunction to Enjoin Liquidation of Certain Entries* is **GRANTED**; and it is further
>
> **ORDERED** that Defendant, United States, together with the delegates, officers, agents, servants, and employees of the United States Department of Commerce and the United States Customs Service, shall be, and hereby are, **ENJOINED**, during the pendency of this litigation, from making or permitting liquidation of any unliquidated entries of certain stainless steel sheet and strip in coils from Germany that:
>
> (1) are covered by *Stainless Steel Sheet and Strip in Coils From Germany: Notice of Final Results of Antidumping Duty Administrative Review*, 68 Fed. Reg. 6716 (Feb. 10, 2003), as amended by *Notice of Amended Final Results of Antidumping Duty Administrative Review: Stainless Steel Sheet and Strip in Coils From Germany*, 68 Fed. Reg. 14,193 (Mar. 24, 2003);
>
> (2) were produced and/or exported by ThyssenKrupp Nirosta GmbH, Krupp Thyssen Nirosta GmbH, ThyssenKrupp VDM GmbH, or Krupp VDM GmbH;

---

[2] The defendant's status report of August 12, 2003, avers that hand-delivery of the Order of Injunction occurred on April 18 and was completed on April 21, 2003. "Upon receiving the Court's order, defendant's counsel confirmed with . . . counsel for Commerce, on or about April 22, 2003, that Commerce had received service and would issue the necessary instructions to Customs." Def.'s Status Report (Aug. 12, 2003).

(3) which entered, or were withdrawn from warehouse, for consumption during the period July 1, 2000 through June 30, 2001; and

(4) remain unliquidated as of 5 o'clock p.m. on the first business day after the day upon which copies of this Order are personally served by Plaintiff on the following individuals and received by them or their delegates:

Ms. Ann Sebastian
Import Administration
International Trade Administration
United States Department of Commerce
Room 1870
14th Street and Constitution Ave., N.W.
Washington D.C.

Hon. Robert C. Bonner
Commissioner of Customs
Attn: Alfonso Robles, Esq.
Chief Counsel
United States Customs Service
Room 3305
1301 Constitution Ave., N.W.,
Washington, D.C.

Lucius B. Lau, Esq.
Commercial Litigation Branch, Civil Division
United States Department of Justice
1100 L Street, N.W.
Suite 10114
Washington, D.C.

and it is further

**ORDERED** that the entries subject to this injunction shall be liquidated in accordance with the final court decision as provided in 19 U.S.C. § 1516a(e).

Order of Injunction Dated April 15, 2003. In other words, the Court made plainly clear to Customs that it was not to liquidate the entries covered by the challenged determination until a final determination on the merits of this action.

After service of the injunction upon the government (at the latest by April 21, 2003), Customs Headquarters transmitted injunction instructions to the relevant Ports a full week later, on or about April 28, 2003. In the meantime, the relevant Ports had liquidated a number of entries, in violation of the injunction, between April 25 and as late as July 7, 2003. In total, approximately 31 of the 150 or so entries that are subject to this action were liquidated at the antidumping duty rate established by Commerce in the review proceeding that the plaintiff brought this action to challenge.

The fact that liquidations in violation of the Order of Injunction were occurring was brought to the attention of the government by the defendant-intervenors, who were the respondents in the antidumping duty administrative review proceedings before Commerce. The Justice Department therefore requested an emergency status conference with the Court, which was convened by telephone on August 20, 2003. At the conference, counsel for the defendant-intervenors represented that when he became aware of Customs' liquidations, he immediately at the end of June and again in July 2003 mailed letters to Customs' Ports Directors where the entries had occurred, which the Justice Department represented as being the Ports of Brownsville, Texas (including Laredo), Detroit, Michigan, and Long Beach, California (which is included in the Port of Los Angeles) and finally Chester, Pennsylvania (which is included in the Port of Philadelphia). The Justice Department excused the inaction of Port officials on the ground that "Customs Headquarters did not receive letters" until around July 25, 2003 (implying that action by Port Directors in such matters is dependent upon instruction from Headquarters) nor were copies of such letters sent to counsel for Commerce or Customs despite the fact that they concerned a matter in litigation. Counsel responded that his research disclosed no responsibility to contact opposing counsel. At any rate, he opted to

take a direct route to try to resolve the problem by contacting the relevant Ports, which undertake the liquidations, not Customs Headquarters.

The Customs duties statutes state in relevant part that "decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to . . . (5) the liquidation or reliquidation of an entry . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title. . . ." 19 U.S.C. § 1514(a). Section 1514(c)(3) states that "[a] protest of the decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before – (A) notice of liquidation or reliquidation, or (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made." 19 U.S.C. § 1514(c)(3).

At the time of the emergency conference, approximately 22 of the entries had been liquidated more than 90 days previously. Nine other liquidations were within the 90-day protest period following liquidation, and the protest period for two ent ries was due to expire on the day following the emergency conference. All the parties, including Customs, admit without qualification that the liquidations were illegal.[3] The Justice Department's suggestion to rectify the problem was for Customs to "voluntarily reliquidate" the nine liquidations pursuant to its authority under 19 U.S.C.

_____

[3] Although Customs pleads inadvertence, which might be true of liquidations occurring before the relevant Ports received notice of instruction from Headquarters on April 28, that does not appear to be true of subsequent liquidations, some as late as July 2003, which more closely resemble deliberate inattention.

§ 1501, on the ground that the liquidations were not yet "final," at a higher rate than the rate at which they had been liquidated, whereupon the defendant-intervenors could (in theory) file a protest which the Customs Service would hold in abeyance until final disposition of the underlying challenge to the antidumping duty rate. Counsel for defendant-intervenors vehemently opposed this suggestion, legitimately, on the ground that the rate at which the subject entries were liquidated is the only presumptively lawful rate that has been established, but more importantly because of the time and expense of having to go through a protest procedure in order to correct a problem not of its own making and which it brought to the attention of the other parties. The Court agreed that such a situation was inequitable, but for the time being, by Order of August 20, 2003, ordered that the two entries for which the doctrine of finality was arguably about to attach be "voluntarily reliquidated" at the liquidated rate, thereby resetting the 90-day clock.

### *Discussion*

Although a reliquidation at the same rate as the previous liquidation avoids burdening the defendant-intervenors with the protest procedure, the result is unsatisfactory because there is no guarantee that Customs will periodically act affirmatively to reset the finality clock until such time as there is a final disposition on the underlying challenge to Commerce's antidumping duty rate. Moreover, it greatly disturbs the Court that the government apparently takes the position that it can disobey an injunctive order of this Court with impunity. The defendant-intervenor suggests sanctions, and the Court takes that under advisement; however, in view of the inequities of the current situation to the parties, the Court inquired whether it had the power, for example pursuant to the residual jurisdiction of 19 U.S.C. § 1581(i), to declare the liquidations void *ab initio*. Counsel

for the Justice Department and the defendant-intervenors took the limited view that (i) jurisdiction

did not attach where another remedy was available, and they interpreted the remedies in this matter

as falling exclusively under 19 U.S.C. § 1516a(c). The plaintiffs would prefer restoration to the

*status quo ante* by some means, and refer the Court to *LG Electronics U.S.A., Inc. v. United States,*

21 CIT 1421, 991 F.Supp. 668 (1997). They take the position that the liquidations were illegal, and

that this Court *can* conclude that it retains jurisdiction over these matters and conclude that lawful

liquidation never occurred and declare the illegal liquidations a nullity.

The government takes the position that doctrine of finality in section 1514 is intended to

protect against all potential claims, and thus it regards the provision as "sacrosanct," even to the

point of protecting them unconditionally from liability for the commission of admittedly illegal acts.[4]

The Justice Department also expressed concern that not abiding by the doctrine, even in the context

of this matter, would "open the door" to litigation of previous "illegal" liquidations, whereupon the

Court made clear that its hypothetical was restricted only to liquidations in violation of the Court's

injunctions and queried whether the government's agencies regularly violate them. No ready answer

was forthcoming.

*LG Electronics* concerned automatic and deemed liquidations, but reasoning therein is

instructive as to the current situation involving acts of volition. As that Court stated:

> In the interest of protecting its injunctions and enforcing prior
> judgments, the court finds that the liquidations in violation of the
> preliminary injunctions had no legal effect, and need not have been
> protested within 90 days, as specified by 19 U.S.C. § 1514, to
> preserve the importer's right to judicial review. . . .

---

[4] The defendant-intervenors also took the position that the Court has no jurisdiction over the post-90 day period entries under the doctrine of finality.

* * *

> . . . The importer's ordinary obligation to watch for notices of liquidation is suspended where the court has issued an order forbidding liquidation. . . . An agency cannot insist that an importer follow its administrative procedure where the agency's own action violates an injunction the importer obtained against that procedure in the course of a dispute with the agency.

21 CIT at 1428, 991 F.Supp. at 675.

This Court agrees with such rationale as it applies in this case. A claim for an unqualified right to commit an admittedly illegal act and then invoke a statute to assert immunity in such illegality is breathtaking for its chutzpah. Even assuming that the government's and the defendant-intervenors' positions are legally correct, they admit that for the nine entries for which finality arguably has not yet attached (being within the 90-day protest window) and for which limited relief here is sought, the government's proposed solution burdens the plaintiff-petitioners for the consequences of the government's illegal acts because the plaintiff-petitioners must monitor Customs to ensure that it retains jurisdiction via posting of periodic voluntary reliquidation notices. For the remaining liquidations, the Court also considers that if the situation were not restored to the *status quo ante*, as a result of the Customs' illegal liquidations the plaintiffs would also lose, in addition, whatever prospective benefits might have been forthcoming from a successful challenge to Commerce's "final" (as amended) antidumping duty rate (*e.g.*, under the Continued Dumping and Subsidies Offset Act of 2000, Pub. L. 106-387, 19 U.S.C. § 1675c, pursuant to which domestic producers with qualifying expenditures for a particular year may, for the time being, obtain a share of the antidumping duties collected by Customs for that year). Furthermore, it is also apparent that none of the 31 illegal liquidations constitutes a *de facto* protestable event. The importer has no

incentive to protest the illegal liquidations since they "benefit" him to the extent that entries covered thereby avoid imposition of any higher antidumping duties that might result from a successful outcome on the merits of the plaintiff-petitioner's underlying action. The plaintiff-petitioner did all that it could to comply with what is statutorily required of it in order to preserve its action. It has no standing to challenge the illegality of these liquidations in any event because it is not an importer, and Congress made clear that 19 U.S.C. § 1516a and not § 1514 was the mechanism governing challenges to antidumping duty determinations. *See*, *e.g.*, *Mitsubishi Electronics America, Inc. v. United States*, 18 CIT 167, 173-74, 848 F.Supp. 193, 198-99 (1994), *aff'd* 44 F.3d 973 (1994). Where liquidation occurs through an illegal act of Customs and in the absence of a protestable event, the doctrine of finality cannot be said to attach. To reach any other result would be absurd.

### *Conclusion*

This Court "possess[es] all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585. Accordingly, the Court returns the matter to the *status quo ante* and declares that all 31 of the illegal liquidations at bar were, and are, null and void *ab initio*. The Court further enjoins Customs from reliquidating the subject entries at a higher rate than the Court's Order of August 20, 2003 until a final decision on the merits.

SO ORDERED.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: September 3, 2003
New York, New York