Slip Op. 04-19

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Barzilay, Judge**

| | |
|---|---|
| Peer Chain Co., | : |
| Plaintiff, | : |
| | : **Court No. 01-00297** |
| v. | : |
| United States of America, | : |
| Defendant. | : |
| | : |

[Defendant's Motion for Summary Judgment granted.]

Decided: March 3, 2004

*Coudert Brothers LLP (John M. Gurley, Esq*., *Matthew M. McConkey, Esq*.) for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams,* Assistant Branch Director, International Trade Field Office; Commercial Litigation Branch, Civil Division, Department of Justice (*James A. Curley*), Trial Attorney; *Beth C. Brotman*, Office of Assistant Chief Counsel, Bureau of Customs and Border Protection, of counsel; and *Dean A. Pinkert*, Office of Chief Counsel for Import Administration, Department of Commerce, of counsel, for Defendant.

### OPINION

**BARZILAY, JUDGE:**

#### I. INTRODUCTION

The court is called upon to determine whether any consequence attaches to a considerable delay by the government in liquidating an importer's entries, where that delay was a direct result of the Department of Commerce's failure to timely notify the United States Customs Service[1]

---

[1] Now the Bureau of Customs and Border Protection.

that a court-ordered suspension of liquidation of the entries had been lifted, rather than Customs'

delay in liquidating once it had been notified.  This matter is before the court on the parties'

cross-motions for summary judgment, and the court exercises jurisdiction pursuant to 28 U.S.C.

§ 1581(a).

Plaintiff, Peer Chain Company, imported roller chain from Japan at a zero percent duty

rate, only to find nearly fifteen years later that it owed the government significant duties totaling

$167,111.  This amount would have been markedly less had the government not delayed in

liquidating Peer Chain's entries for nearly five years, as interest accrued at a compound rate over

this time period.  Accordingly, Peer Chain challenges both the duty rate at which its entries were

liquidated and the assessment of interest on those duties.  Peer Chain urges that its entries be

deemed liquidated at the zero percent duty rate because, it argues, the government failed to

provide proper notice of a final decision of the Court of Appeals for the Federal Circuit that lifted

the suspension of liquidation of its entries,[2] and also because the government delayed liquidating

those entries.  In addition to raising these claims, which rely on 19 U.S.C. § 1504(d) (1993)

("section 1504(d)"),[3] Peer Chain also argues that it was denied its due process rights under the

---

[2]  *See Sugiyama Chain Co. v. United States*, 60 F.3d 843 (Fed. Cir. 1995) ("*Sugiyama*").

[3] 19 U.S.C. § 1504(d) (1993) states:
(d) Limitation.  When a suspension required by statute or court order is removed,
the Customs Service shall liquidate the entry within 6 months after receiving
notice of the removal from the Department of Commerce, other agency, or a court
with jurisdiction over the entry. Any entry not liquidated by the Customs Service
within 6 months after receiving such notice shall be treated as having been
liquidated at the rate of duty, value, quantity, and amount of duty asserted at the
time of entry by the importer of record.

Fifth Amendment of the United States Constitution. Finally, Peer Chain appeals to the court for equitable relief in the event that it does not prevail on the above-mentioned claims.

The government opposes this motion and cross-moves for summary judgment, arguing that deemed liquidation cannot result from the facts at hand because the entries were liquidated within six months of Customs' receipt of liquidation instructions from Commerce, as directed by section 1504(d). The court holds that neither the statute nor the relevant case law attaches any consequence to governmental delay in liquidating entries that occurs as a result of Commerce's failure to notify Customs that the court-ordered suspension of liquidation has been removed. It further holds that because Customs is free to liquidate entries at any time after a suspension of liquidation has been removed, Customs' liquidation of these entries before receiving "unambiguous and public notice" from Commerce did not render the liquidations void or invalid. Furthermore, the court holds that it is unable to fashion any of the equitable remedies requested by Peer Chain. Thus, because Customs liquidated Peer Chain's entries within six months of receiving notice from Commerce that suspension of liquidation had been removed, in accordance with section 1504(d), the liquidation was valid. Finally, the court holds that Peer Chain's due process rights were not violated. Accordingly, Peer Chain's summary judgment motion is denied and the government's motion is granted.

## II. BACKGROUND

Peer Chain imported roller chain manufactured by Sugiyama, a Japanese exporter, into the United States on three dates: (1) August 21, 1985; (2) January 28, 1986; and (3) March 14,

1986.  At the time Peer Chain imported its merchandise liquidation of all Japanese roller chain was subject to statutory suspension in accordance with a 1973 antidumping duty order and the preliminary antidumping duty rates were set at zero because Commerce's most recent final administrative review determination had found no dumping by Sugiyama.  *See Roller Chain, Other Than Bicycle, From Japan*, 38 Fed. Reg. 9226 (Apr. 12, 1973);  *Roller Chain, Other Than Bicycle, From Japan; Final Results of Administrative Review of Antidumping Finding*, 48 Fed. Reg. 51,801 (Nov. 14, 1983) (covering 105 of the 119 manufacturers of Japanese roller chain). Thus, the liquidation of Peer Chain's entries was suspended pending Commerce's final determination for the 1985-1986 period of review, and it paid no duties or cash deposits at the time of importation.

Six years after the subject merchandise entered the United States, Commerce established a 43.29 percent duty rate upon Sugiyama roller chain for the 1985-1986 period of review.  *See Roller Chain, Other Than Bicycle, From Japan; Final Results of Antidumping Duty Administrative Review*, 57 Fed. Reg. 43,697 (Sept.  22, 1992) ("*Final Determination*"). Sugiyama challenged the results of the *Final Determination*, which was sustained in part in *Sugiyama Chain Co. v. United States*.  *See* 18 CIT 640, 855 F. Supp. 1313 (1994); 18 CIT 423, 852 F. Supp. 1103 (1994).  Although Peer Chain was not a party to Sugiyama's suit, the liquidation of its entries was enjoined by court order, and Peer Chain's entries therefore continued to be suspended.  Ultimately, this Court reversed and remanded some of Commerce's administrative findings in the *Final Determination*, but sustained those covering Peer Chain's entries.  The Court of Appeals for the Federal Circuit affirmed this Court's ruling in Sugiyama's

suit on July 11, 1995, and Sugiyama's petition to the Federal Circuit for rehearing *en banc* was denied on October 5, 1995.

Ninety days later, on January 3, 1996, time for filing for writ of *certiorari* expired, and the court-ordered suspension of liquidation of Peer Chain's entries was lifted.[4]  Commerce never published general notice in the Federal Register of the Federal Circuit's *Sugiyama* decision; it did not provide any form of public notice of the decision; and it never sent direct notice of the decision to the importers whose entries were suspended pursuant to the case.  Because Customs cannot liquidate suspended entries, and because Customs had not received any notice that suspension had been removed, Peer Chain's entries remained unliquidated.[5]  When Commerce finally sent notice to Customs, it did so via a non-public e-mail on May 22, 2000, although suspension of liquidation had been lifted nearly five years earlier.  Customs then liquidated Peer Chain's entries at the 43.29 percent duty rate on June 23, 2000 and August 4, 2000 in accordance with Commerce's liquidation instructions contained in the May 22 e-mail.  The government also billed Peer Chain for the interest that had accrued, compounded daily from 1986 until 2000.  This

---

[4] The date on which suspension of liquidation was lifted is the subject of dispute between the parties.  Peer Chain argues that suspension of liquidation of its entries was removed on October 9, 1995 - ninety days after the Federal Circuit's July 11, 1995 opinion.  The government, on the other hand, argues that suspension of liquidation was removed on January 3, 1996 - ninety days after rehearing *en banc* was denied.  The correct date is the date on which the time to file a petition for a writ of *certiorari* had run, ninety days from date of denial of a petition for rehearing.  *See* SUP. CT. R.13(3) ("The time to file a petition for a writ of *certiorari* runs from the date of entry of the judgment or order sought to be reviewed . . . [b]ut if a petition for rehearing is timely filed in the lower court by any party, the time to file the petition for a writ of *certiorari* for all parties . . . runs from the date of the denial of the petition for rehearing . . . .").

[5] At oral argument, the government explained that Commerce's delay was due, in part, to an oversight caused by a turnover of personnel.  *See* Transcript of Oral Argument held on Oct. 1, 2003 ("*Oral Arg. Tr.*") at 38-39.

demand for payment, totaling $167,111 and received in the summer of 2000, was the first notice

of any kind that Peer Chain was given regarding its entries since the *Final Determination* had

been published in the Federal Register in 1992.

### III. DISCUSSION

Summary judgment is appropriate if the court determines that "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there are no genuine issues as to any material fact, and that the moving party is entitled to a

judgment as a matter of law." USCIT R. 56(d); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986). Here, both parties have moved for summary judgment and maintain that there are no

genuine issues of material fact to be resolved by a trial on the merits. *Pl.'s Mem. of Law in Supp.*

*of Mot. for Summ. J.* ("*Pl.'s Br.*") at 8; *Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and*

*in Opp. to Pl.'s Mot. for Summ. J.* ("*Def.'s Br.*") at 1. The court agrees and accordingly finds

that summary judgment is appropriate in this case.

### A.      Plaintiff's Contentions

Peer Chain contends that its entries should be treated as having been liquidated at zero

percent, the rate of duty assessed at the time of entry. Peer Chain predicates this contention upon

two separate grounds. First, Peer Chain argues that by failing to either publish Federal Register

notice of the final decision in *Sugiyama* pursuant to 19 U.S.C. § 1516a(e) ("section 1516a(e)"),[6]

---

[6] 19 U.S.C. § 1516a(e) states:
If the cause of action is sustained in whole or in part by a decision of the United
States Court of International Trade or of the United States Court of Appeals for
the Federal Circuit . . . entries, the liquidation of which was enjoined under

or to provide some other form of "unambiguous and public notice" under case law, Commerce

frustrated the operation of section 1504(d).  *Pl.'s Br.* at 13-15.  Peer Chain explains that under

sections 1504(d) and 1516a(e), Federal Register publication constitutes the notice to Customs

that triggers the operation of the six-month period within which entries must be liquidated by

Customs to avoid having been deemed liquidated.  *See Pl.'s Br.* at 11.  Additionally, according to

Peer Chain, recent cases of this Court and of the Federal Circuit indicate that where suspension

of liquidation of entries has been lifted, Federal Register publication constitutes the trigger date,

and Commerce's non-public liquidation instructions do not.  *See Pl.'s Br.* at 13.  Peer Chain thus

argues that only a public form of notice can trigger the deemed liquidation period, and therefore

Commerce's failure to publish Federal Register notice or any other form of public notice

prevented the six-month deemed liquidation period from commencing.  As a result, Peer Chain

argues that the government circumvented section 1504(d), and thus, the court should either set a

surrogate notice date at which time Customs was deemed to have received notice, with deemed

liquidation of the entries occurring six months later, or hold that the liquidations of its entries

were null and void *ab initio.  See id.; see also Oral Arg. Tr.* at 9.

Second, Peer Chain argues that Commerce acted unreasonably and prejudicially when it

delayed sending liquidation instructions to Customs for nearly five years.  It does not argue for

deemed liquidation on this claim alone, however.  Instead, it supports its argument that the court

should hold entries deemed liquidated by emphasizing that the government's delay was

---

subsection (c)(2) of this section, shall be liquidated in accordance with the final
court decision in the action.  Such notice of the court decision shall be published
within ten days from the date of the issuance of the court decision.

particularly egregious and harmful in this case, such that the court should apply the deemed liquidation provision in order to remedy such egregious harm. Peer Chain also makes a due process claim under the "delay" line of federal due process cases. It cites the Court of International Trade's opinion in *International Trading Co. v. United States* in support of the proposition that the Fifth Amendment of the Constitution requires a publicly determinable deemed liquidation date. 24 CIT 596, 110 F. Supp. 2d 977, 988-90 (2000) ("*ITC I*"). Arguing that its due process rights were violated by the government's five-year delay in liquidating its entries, Peer Chain contests liquidation at the established duty rate and the assessment of compounded interest on the principal owed. *See Pl.'s Br.* at 22.

Finally, in the event that the assessment of antidumping duties is found to be lawful, Peer Chain urges the court to provide equitable relief, limiting the assessment of interest on antidumping duties owed to the government in order to prevent the government from being "rewarded" with additional money. *Pl.'s Br.* at 27-29. To that end, Peer Chain recommends that the court establish an equitable stop date for the running of interest, that it disallow interest assessed on antidumping duties, or that it recalculate the interest imposed using a simple rate, rather than a compound one. *See id.* at 29.

**B.      Defendant's Contentions**

The government contests Peer Chain's argument that its entries should be deemed liquidated under 19 U.S.C. § 1504(d) (1993), or that the interest charged on such entries should be reduced. As an initial matter, the government argues that Peer Chain is not entitled to deemed liquidation because Customs abided by the statute, liquidating Peer Chain's entries within six

months of receiving e-mail notice from Commerce that the court-ordered suspension was

removed. *See Def.'s Br.* at 7-9. The government contends that according to relevant case

precedent, in order for entries of imported goods whose liquidation was previously suspended by

a court order to be deemed liquidated, Customs must not have liquidated the entry at issue within

six months of receiving notice from Commerce that the suspension of liquidation has been lifted.

*See id.* The government further argues that in this case Customs did in fact liquidate within the

six-month period, and therefore, Peer Chain has no claim for relief under section 1504(d). *See*

*Def.'s Br.* at 8 (citing *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir.

2002) ("*Fujitsu*")), 28-29.

Moreover, according to the government, Commerce was not required by section 1516a(e)

to publish Federal Register notice of the final court decision in *Sugiyama* because the Court

sustained Commerce's determination in the specific cause of action covering Peer Chain's

entries.[7] *See Def.'s Br.* at 9. The government further argues that Peer Chain failed to utilize the

judicial remedy available, to petition for a writ of *mandamus* under 28 U.S.C. § 1581(i)(4), in

order to compel either Commerce to publish notice of the removal of suspension of liquidation or

Customs to liquidate its entries. *See Def.'s Br.* at 24-25. Additionally, the government counters

---

[7] The government notes that section 1516a(e) only requires Commerce to publish notice of a court decision where the cause of action against the government is sustained in whole or in part by the Court of International Trade or the Federal Circuit. It also asserts that each administrative review period constitutes an independent cause of action. Thus, the government argues that because the Court upheld Commerce's determination made in the administrative review period covering the entries at issue in this case, that individual cause of action against the government was not sustained in whole or in part. Therefore, the government argues, Commerce was not required by section 1516a(e) to publish Federal Register notice of the final court decision regarding the administrative review period at issue in this case.

Peer Chain's due process claim by arguing that no deprivation of property had been suffered, and therefore there is no basis for relief under the Fifth Amendment. *See Def.'s Br.* at 29, 33-39. Finally, the government asserts that Peer Chain is not entitled to an equitable remedy because the original duties owed are not in dispute, and the interest included in the demand for payment was properly assessed according to the statutory scheme laid out by Congress under 19 U.S.C. §§ 1673f(b) and 1677g(a).[8] *See Def.'s Br.* at 29-33.

## C.      Analysis

Peer Chain complains, justifiably, of the government's egregious delay in liquidating its entries. Not only did Commerce take nearly eleven years to complete its antidumping investigation and set the duty rate at 43.29 percent, but it waited an additional four and one-half years to notify Customs that the court-ordered suspension of liquidation of Peer Chain's entries had been removed.[9] Peer Chain's reliance on section 1504(d) in seeking a remedy for such delay is, however, unavailing. Because the law provides no other remedy for Commerce's delay in notifying Customs of the removal of suspension of liquidation, Peer Chain turns to the deemed liquidation provision of section 1504(d) and the case law interpreting the statute in an attempt to

---

[8] The government also asks the court to dismiss Entry No. 85-844092-2 from this action, arguing that the court lacks jurisdiction because Peer Chain did not pay all liquidated duties, charges, or exactions on the entry prior to filing the summons in violation of 28 U.S.C. § 2637(a). *See Def.'s Br.* at 4. Despite Peer Chain's pointed and accurate retort that the government's practices provide no flexibility to importers submitting payments late, while it delayed the liquidation of Peer Chain's own entries for nearly five years, the statute is clear as to the requirements for judicial review. Accordingly, because all duties, charges or exaction were not paid within the time limit, this entry is severed and dismissed for lack of jurisdiction.

[9] Although Peer Chain complains that liquidation was delayed nearly fifteen years, it presently challenges only the government's delay in liquidating the entries once suspension of liquidation was lifted.

fashion a claim for relief. Peer Chain argues that because the notice given by Commerce to Customs was not "unambiguous and public," Customs' liquidation of its entries was invalid. Therefore, according to Peer Chain, the court should either set a surrogate notice date occurring shortly after suspension of liquidation was removed - six months after which the entries would have been deemed liquidated, or rule the liquidations null and void *ab initio*. Peer Chain misreads the statute and relevant case law in supporting its argument, as explained below.

**1.        *Establishing a Surrogate Notice Date in Order to Apply 19 U.S.C. § 1504(d)***

The Court notes from the outset that section 1504(d) applies only to delays by Customs in liquidating entries once notice, as specified by the statute, has been received. The statute states, in relevant part:

> When a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. §1504(d) (1993). The statute is specifically worded to indicate that only Customs' inaction triggers deemed liquidation, and only where it fails to liquidate within six months of receiving notice from Commerce, other agency or a court with jurisdiction over the entry. In the case at hand, Customs received its first and only known notice of the removal of suspension on May 22, 2000, and the entries were liquidated well within six months of that date, on June 23, 2000 and August 4, 2000. Thus, section 1504(d) does not and cannot apply to the disputed entries. *See Fujitsu*, 283 F.3d at 1382 ("Deemed liquidation under section 1504(d) can occur

only if Customs fails to liquidate entries within six months of having received notice of the removal of a suspension of liquidation"). Nevertheless, Peer Chain claims that Commerce has frustrated the operation of section 1504(d) by delaying notice, and argues that the court should establish a surrogate date, upon which notice was deemed to have been given to Customs for purposes of triggering the six-month deemed liquidation period. To do so would be improper.

Peer Chain urges the court to deem Customs notified on either the date of publication by the court of the *Sugiyama* decision or on the date Commerce was required, as Peer Chain argues, to publish notice in the Federal Register according to section 1516a(e).[10] Both suggested dates were considered and dismissed under nearly identical circumstances by the Federal Circuit in *Fujitsu*. The *Fujitsu* Court stated that "publication of a court decision in a case does not necessarily result in Customs' receipt of notice that a suspension of liquidation that was in effect during the case has been removed." 283 F.3d at 1383. Peer Chain's attempt to distinguish *Fujitsu* on the facts, pointing out that the instant case involves the complete absence of a Federal Register publication results in a distinction without a difference. Instead, the issue of whether the publication of a court decision constitutes notice turns on indications of whether Customs actually received notice. *See id.* at 1379 ("section 1504(d) requires that Customs receive notice that a suspension of liquidation has been removed from the Department of Commerce, other agency, or a court with jurisdiction over the entry"(internal quotations omitted)). Upon the facts at hand, nowhere has it been indicated or alleged that Customs actually received such notice prior

---

[10] Whether Commerce was in fact required to publish notice of the *Sugiyama* decision under section 1516a(e) is a point of dispute between the parties. *See* note 7, *supra*. The court, however, does not decide this issue, as it is not relevant to the issue at hand.

to the May 22 e-mail message. Thus, the date of publication of the *Sugiyama* decision cannot serve as a surrogate notice date for purposes of triggering the six-month deemed liquidation period.

Peer Chain further urges the court to rely upon the regime established by section 1516a(e) in setting the surrogate notice date. In Peer Chain's estimation, the date upon which Commerce should have published Federal Register notice of the *Sugiyama* decision would serve as the trigger date for the deemed liquidation period. Further, because Customs did not liquidate within six months of this date, Peer Chain argues that its entries should be deemed liquidated at the rate of duty asserted at the time of entry. This approach is unacceptable even as a suggested surrogate date as it is tantamount to imposing the consequence of deemed liquidation on Commerce's purported violation of section 1516a(e). This approach was also specifically rejected by the Federal Circuit in *Fujitsu*, where the plaintiff in that case argued that "the government should not be allowed to 'sidestep' the six-month limitation period in 19 U.S.C. § 1504(d) by having Commerce ignore for over a year the ten-day publication requirement in section 1516a(e)." 283 F.3d at 1382. The *Fujitsu* Court responded, instructively, that "Commerce's unexplained delay in publishing notice of the [underlying] decision, frustrating though it may be, does not change the result in this case." *Id*. The Court went on to indicate that "there is no language in section 1516a(e) that attaches a consequence to a failure by Commerce to meet the ten-day publication requirement, let alone the consequence of deemed liquidation under section 1504(d)." *Id* (citation omitted). Peer Chain attempts to distinguish *Fujitsu* by arguing that it is not proposing that a violation of section 1516a(e) causes deemed liquidation, but rather that the required date of

publication should provide a logical surrogate date for the commencement of the six-month period. *See Oral Arg. Tr.* at 21-22. Whether termed a "consequence" or "suggestion" the result is not changed; a delay by Commerce in publishing Federal Register notice simply cannot serve as the basis for deemed liquidation under section 1504(d).

**2.      *Declaring Liquidations of Entries Null and Void* Ab Initio**

As an alternative to establishing a surrogate notice date to apply the deemed liquidation provision of section 1504(d), Peer Chain argues that Customs' liquidation of its entries was invalid, and should be declared null and void *ab initio*.[11] In supporting this claim, Peer Chain misreads *International Trading Company v. United States*, 281 F.3d 1268 (Fed. Cir. 2002) ("*ITC II*") and *Fujitsu.* Peer Chain errs in arguing that Customs' liquidation of its entries on June 23 and August 4 was somehow illegal or invalid because it was not based on unambiguous and public notice. In fact, Customs is always free to liquidate entries, once suspension of liquidation has been removed. According to section 1504(d), Customs need not wait until it receives notice regarding removal of suspension in order to liquidate. Rather, once Customs receives such notice, it must liquidate within six months, or face the consequence of deemed liquidation. Certainly, if the entries are no longer suspended, the absence of unambiguous and public notice

---

[11] The court notes that Peer Chain's argument, that the entries be declared null and void *ab initio*, is based solely on the Court of International Trade's opinion in *AK Steel Corporation v. United States*, 27 CIT __, 281 F. Supp. 2d 1318 (2003) ("*AK Steel*"), which is distinguishable from the case at hand. In *AK Steel*, this Court held that where Customs had liquidated certain entries in violation of a court-ordered injunction, those liquidations were illegal. 281 F. Supp. 2d at 1323. The Court thus held that liquidations through an illegal act of Customs were null and void *ab initio*. In the case at hand, no court-ordered injunction against liquidation was in place when Customs liquidated Peer Chain's entries. *Accord Cemex, S.A. v. United States*, 27 CIT __, Slip Op. 03-125 (2003).

does not render liquidations by Customs illegal.  Without any such illegal action by Customs, the

court has no basis upon which to deem the liquidations null and void *ab initio*, as was done in *AK*

*Steel Corporation v. United States,* 27 CIT __, 281 F. Supp. 2d 1318 (2003).

The *ITC II* and *Fujitsu* cases do not hold otherwise, nor do they afford Peer Chain any

relief in this case.  In *ITC II*, the suspension of liquidation occurred as a result of an

administrative review, not a court-ordered suspension, as in the case at hand.  Thus, when

Commerce completed its review in that case, it published the results of that review and the new

duty rate in the Federal Register, as directed by statute.  The Federal Circuit held that both the

removal of suspension of liquidation and notice for purposes of section 1504(d) were

accomplished by publication in the Federal Register.  *ITC II*, 281 F.3d at 1276-77.  In doing so,

the Court expressed a preference for the unambiguous and public notice provided by Federal

Register publication, over private e-mail notice.  *See id.* at 1275.  Nowhere did it indicate that

Customs is required to wait for notice in order to liquidate, or that liquidation before

unambiguous and public notice is invalid or illegal.

In *Fujitsu*, as in the instant case, the liquidation of entries was suspended pursuant to a

court order.  Although the *Fujitsu* trial court held that Customs received notice of the removal of

suspension of liquidation only when Commerce published notice in the Federal Register, in

affirming that opinion the Federal Circuit merely held that "because no earlier date qualifie[d],"

the date of Federal Register publication was the date upon which notice was effected.  *Fujitsu*,

283 F.3d at 1378, 1380.  Pointedly, the *Fujitsu* Court did not indicate that the exclusive form of

notice, for purposes section 1504(d), must be Federal Register publication or that Customs was

precluded from liquidating prior to the receipt of Federal Register notice.

Undoubtedly, unambiguous and public notice is preferable to private e-mail communication. As indicated by the Federal Circuit, public notice establishes a clear and identifiable date for commencement of the liquidation period, it prevents the government from unilaterally extending the liquidation of entries, it increases certainty in the importation process, and finally, it helps to ensure that the courts are not called upon to referee debates about what kind of communication qualifies as notice. *See ITC II*, 281 F.3d at 1275; s*ee also Fujitsu*, 283 F.3d at 1381-82. The fact that such notice is desirable, and that its value has been recognized by the courts cannot, however, be used successfully to argue that the lack of such notice invalidates a liquidation performed on entries that were no longer under any court-ordered suspension.

**D.      Equitable Remedies**

Peer Chain argues that, to the extent the government's assessment of antidumping duties is held to be lawful, the interest assessed on the antidumping duties should be eliminated or reduced. It specifically asks the court to pay special attention to the nearly five year delay in liquidating its entries, and argues that the government should not be "rewarded" with additional money in the form of interest as a result of its tardiness. *Pl.'s Br*. at 26. Thus, Peer Chain asks that the court either set an equitable stop date for the accrual of interest, or alternatively, that the court disallow the government from calculating interest at a compounded rate.`

*1.      Equitable Stop Date for Interest*

Peer Chain argues that because the government's excessive delay resulted in interest payments that far surpass the amount of duty actually owed, the court should establish an

equitable stop date for the imposition of interest.  The court notes from the outset that 19 U.S.C.

§§ 1673f(b)[12] and 1677g(a)[13] require the government to collect underpayments of antidumping

duties together with interest.  In support of its argument, Peer Chain cites to several cases, none

of which are instructive, considering the facts at issue in this case.[14]  The government, on the

---

[12]  19 U.S.C. § 1673f states:

        (b) Deposit of estimated antidumping duty under section 1673e(a)(3) of this title.

If the amount of an estimated antidumping duty deposited under section 1673e(a)(3) of this title is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption after notice of the affirmative determination of the Commission under section1673d(b) of this title is published shall be--
(1) collected, to the extent that the deposit under section 1673e(a)(3) of this title is lower than the duty determined under the order, or
(2) refunded, to the extent that the deposit under section 1673e(a)(3) of this title is higher than the duty determined under the order,

together with interest as provided by section 1677g of this title.

[13]  19 U.S.C. § 1677g states:

        (a) General rule.

Interest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after--
(1) the date of publication of a countervailing or antidumping duty order under this subtitle or section 1303 of this title, or
(2) the date of a finding under the Antidumping Act, 1921.

        (b) Rate.

The rate of interest payable under subsection (a) for any period of time is the rate of interest established under section 6621 of Title 26.

[14]  Peer Chain cites to *Pagoda Trading Co. v. United States*, 9 CIT 407, 617 F. Supp. 96 (1985), which does not address the issue of the imposition of interest; *St. Paul Fire & Marine Ins. Co. v. United States*, 16 CIT 663, 799 F. Supp. 120 (1992), which was reversed - a fact that Peer Chain fails to indicate; and *Koyo Seiko Co. v. United States*, 16 CIT 366, 796 F. Supp. 517 (1992), which Peer Chain also fails to mention was reversed.  In any event, the statute is clear on its face that interest was properly assessed.

other hand, correctly indicates that "principles of equity do not allow an importer to escape liability for interest on underpayment of countervailing duty." *See New Zealand Lamb Co. v. United States*, 149 F.3d 1366, 1368 (Fed. Cir. 1998) ("equitable estoppel is not available against the government in cases involving the collection or refund of duties on imports" (citation and quotations omitted)).

**2.      *Disallowance of Compound Interest***

Peer Chain itself acknowledges that the statute "seems to allow for the imposition of interest." *Pl.'s Br.* at 29.  It argues however, that the imposition of compound interest on entries that are fifteen years old is "grossly unfair and is punitive." *Id.*  The court first notes that regardless of whether the government had published and liquidated in accordance with the relevant statutes, Peer Chain would have lawfully been required to pay interest on its entries until removal of suspension of liquidation, a period of nearly eleven years.  The court is sympathetic to the notion that the assessment of interest at a compound rate for the nearly five years of governmental delay exacerbates the effect of the failure to liquidate in a timely manner.  There is, however, no basis for the court to fashion such an equitable remedy.  It is Congress' role, rather than the court's, to establish the antidumping laws.  Under the Trade and Tariff Act of 1984, Congress specifically amended section 1677 to provide that interest on antidumping duty payments must be compounded in accordance with 26 U.S.C. § 6621.  Thus, there is no basis for the assertion that the assessment of compound interest is punitive, and therefore contrary to the remedial intent of the antidumping law.  *See Fujitsu General v. United States*, 24 CIT 733, 110 F. Supp.2d 1061, 1083 (2000), *aff'd*, 283 F.3d 1364 (Fed. Cir. 2002).

E.      **Due Process**

Peer Chain further claims that as a result of the government's delay in liquidating its entries, its rights were violated under the Due Process Clause of the Fifth Amendment to the United States Constitution.[15]  To remedy this alleged violation of its due process rights, however, Peer Chain does not seek any notice, hearing or other procedural remedy.  Instead, it asks the court to reduce the interest assessed on the liquidated entries.  *See Pl.'s Br.* at 27.

"[T]he Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541 (1985).  In order to establish a due process violation under the Fifth Amendment, Peer Chain must show some property interest at stake.  Peer Chain points to the interest added to the amount due, which was inflated as a result of the significant time it took Commerce to notify Customs to liquidate the entries.  This challenge seems to rest on the proposition that at some point, a delay in collecting an amount due becomes so egregious that it violates due process to permit collection.  The court notes, however, that during the time of the delay, Peer Chain retained control and use of the money rightfully owed to the government.  Therefore, Peer Chain is claiming that its due process rights were violated by the government delaying collecting on money to which the government was rightfully entitled.  Peer Chain is merely claiming the government violated its due process rights by not

---

[15] The court notes that Peer Chain's due process claim depends upon *ITC I*, a Court of International Trade opinion which was affirmed by the Federal Circuit without addressing the due process issue; and *Koyo Seiko Co. v. United States,* 16 CIT 740, 796 F.Supp. 517 (1992), which was affirmed in part, reversed in part, and remanded.  *See ITC II*; *Koyo Seiko Co. v. United States*, 20 F.3d 1160 (Fed. Cir. 1994).

forcing it to pay a bill. Thus, Peer Chain has failed to establish that a property interest is at stake under the current facts. *See Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982) ("The exercise of judicial power . . . is therefore restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate").

Seeking any other substantive remedy would confuse substance and procedure. Were this court to rule otherwise, the Due Process Clause "would be reduced to a mere tautology." *Loudermill,* 470 U.S. at 541. Peer Chain focuses its argument on whether there was a deprivation of due process - a question of whether sufficient procedures were afforded - but then seeks a substantive remedy. "'Property,' [however,] cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Id*. Upon the facts presented, assuming *arguendo* that the Due Process Clause does apply, the court notes that Peer Chain was afforded significant process. During the delay period, Peer Chain was free to petition for a writ of *mandamus* to compel liquidation of its entries. After its entries were liquidated and interest was assessed, Peer Chain availed itself of the opportunity to protest Customs' liquidation. After Customs reviewed and denied the protest, Peer Chain thereafter filed a summons in this court. Therefore, Peer Chain is not entitled to a reduction in the interest assessed on its entries under the Due Process Clause of the Constitution.

## IV. Conclusion

The court holds that Peer Chain is not entitled to have its entries deemed liquidated under

section 1504(d) (1993), despite the government's delay of nearly five years.[16]  Further, the court

holds that Customs validly liquidated Peer Chain's entries, and thus the liquidation is not null

and void *ab initio*.  The court is also unable to fashion an equitable remedy in this instance that

might, at the very least, lessen the impact of the government's delay by limiting or preventing the

imposition of interest during this period of delay.  Finally, Peer Chain's due process rights have

not been violated by Commerce's failure to publish public notice.  The court, therefore, denies

Plaintiff's motion for summary judgment and grants Defendant's motion.

 

 

 

 

        March 3, 2004                                        /s/ Judith M. Barzilay
Dated:_____          _____
        New York, NY                                    Judith M. Barzilay
                                                               Judge

---

[16]As a statutory remedy to this problem is unavailable, where no consequence attaches to Commerce's delay in notifying Customs that the suspension of liquidation has been lifted, the court will establish a judicial remedy.  In subsequent cases, the court will order Commerce to publish the results of its final antidumping determinations in the Federal Register when such cases become final.  This remedy, however, cannot be imposed retroactively and is thus, unfortunately, unhelpful to the current plaintiff.